IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HEATHER BYAM,                           *

    Plaintiff,                          *

                                    Civil Action No. RDB-22-1617

    v.                                  *

OCEAN ENTERPRISE 589, LLC,               *

    Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Plaintiff Heather Byam ("Plaintiff" or "Byam") brings this tort action against Defendant Ocean Enterprise 589, LLC, doing business as Ocean Downs Casino ("ODC"), for alleged damages sustained as a result of a complaint that a manager at ODC filed against her. (Complaint, ECF No. 1.) Defendant ODC has filed a Motion to Dismiss (ECF No. 6), Plaintiff has responded (ECF No. 10), and Defendant has replied (ECF No. 12). The Court has considered the relevant filings and no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Defendant's Motion (ECF No. 6) shall be **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.

BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Heather Byam began her employment with the Maryland Lottery and Gaming Control Agency ("Maryland Lottery Commission" or "the Commission") in October 2015 as a Casino Compliance Representative, tasked with

overseeing casinos.[1] (ECF No. 1 at 2.) Beginning December 2017, Byam was assigned to the compliance office for Ocean Downs Casino ("ODC") located on the gaming floor of the casino. *Id.* At ODC as a Casino Compliance Representative from the Maryland Lottery Commission, Plaintiff fingerprinted casino employee applicants, monitored employees' and vendors' compliance with state law, received complaints from the public, and conducted investigations. *Id.*

On May 1, 2021, Plaintiff became aware of ODC employees drinking beer during their work hours. *Id.* at 3. Byam initiated an investigation into the matter and obtained video surveillance footage revealing ODC employees consuming beer on the job. (ECF No. 1 at 3.) The general manager at ODC, Bobbi Sample, denied wrongdoing on behalf of her employees, and wrote a letter about Byam's investigation to the Commission on May 10, 2021. (ECF No. 1-1.) The letter was written on Sample's behalf as manager at ODC and was addressed to Byam's supervisor, with two other Maryland Lottery Commission directors copied. *Id.*

Sample's letter begins by stating that she "would like to file a formal complaint against" Byam. (ECF No. 1-1.) The letter states that Byam's video surveillance request concerned an internal personnel issue that was not a Commission interest, so Byam's attention was misplaced. *Id.* The letter continues to raise concerns that Byam had been sharing information about her findings with ODC employees, characterizing such conversations as "unacceptable, unethical and unprofessional." *Id.* Sample next requests the Maryland Lottery Commission to inspect Plaintiff's "rolling file that she brings to and from the office when she works" to determine whether such file improperly contains confidential information. *Id.* The letter

---

[1] Casinos are privately held businesses. (ECF No. 1 at 2.)

concludes with noting that Byam was a former employee at ODC from 2010 until she voluntarily resigned in 2014. *Id.* Sample requests that in the future the Commission involves ODC when considering to transfer a former ODC employee to work onsite. (ECF No. 1-1.) Sample explains that even where someone leaves employment at the casino voluntarily, there might have been coaching sessions and differing perceptions and philosophies which could have led to the former employee's departure. *Id.* Finally, the letter states that Byam "was not happy in her tenure at the casino which is why she left for other employment" which Sample believes to be "a contributing factor to [Byam's] actions." *Id.*

After receipt of Sample's letter, the Maryland Lottery Commission terminated Byam's employment on June 4, 2021. (ECF No. 1 at 4.) Plaintiff appealed her termination through her union, and an Administrative Law Judge ("ALJ") of the Office of Administrative Hearings for Maryland set aside the termination on March 21, 2022. *Id.* The ALJ ordered the State of Maryland to reinstate Byam's employment, pay back wages, and restore her employment benefits. *Id.* Plaintiff alleges that she has suffered significant economic damages resulting from time without income, irreparable harm to her reputation and character, and extreme emotional distress. *Id.*

On June 30, 2022, Plaintiff filed suit in this Court under diversity of citizenship jurisdiction pursuant to 28 U.S.C § 1332. (ECF No. 1.) The case was filed against Defendant ODC alleging Wrongful Interference with Economic Relations (Count One), Invasion of Privacy: Publication of Private Information (Count Two), and Invasion of Privacy: Putting Plaintiff in a False Light (Count Three). *Id.* ODC has filed a Motion to Dismiss (ECF No. 6), arguing that Plaintiff has failed to sufficiently allege the necessary elements for a claim under

Count One, that Plaintiff can't argue statements in Sample's letter are false when the law requires true statements of fact under Count Two, and that the contents of the letter were not publicized for a claim under Count Three, among other various alternative arguments. In response, Plaintiff has withdrawn her claim under Count Two and her request for punitive damages. (ECF No. 10-1 n.1.) Accordingly, Plaintiff's claim for Invasion of Privacy: Publication of Private Information (Count Two) is DISMISSED WITH PREJUDICE and will not be analyzed below. The remainder of Plaintiff's Complaint as set forth in Counts One and Three will similarly be DISMISSED WITH PREJUDICE for the reasons explained herein.[2]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic

---

[2] Because Plaintiff's substantive claims shall be dismissed and her request for punitive damages has been withdrawn, the Court need not address her demand for attorney's fees. *See St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 568 A.2d 35, 43 (Md. 1990) ("evidence of reasonable attorney's fees may be considered by the jury whenever punitive damages are appropriate").

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

When ruling on motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L. Ed. 2d 179 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one

for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir.

2015).

## ANALYSIS

Plaintiff's Complaint contains mere labels and conclusions and must be dismissed

under Federal Rule of Civil Procedure 12(b)(6). Counts One and Three of the Complaint are

addressed in turn.

### I.   Wrongful Interference with Economic Relations (Count One)

To state a claim for wrongful interference with contractual relations under Maryland

law,[3] a Plaintiff must plead facts sufficient to establish: "(1) existence of a contract between

plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's

intentional interference with that contract; (4) breach of that contract by the third party; and

(5) resulting damages to the plaintiff." *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. 1991)

(internal citations omitted). "[T]o recover for tortious interference with contractual …

relations, the interference must have been wrongful or unlawful." *Travelers Indem. Co. v. Merling*,

605 A.2d 83, 90 (Md. 1992) (citing cases). In general, "what is wrongful conduct is 'incapable

of precise definition,' and must be determined based on the facts and circumstances at hand."

*Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 694 (D. Md. 2012) (quoting

*Macklin v. Robert Logan Associates*, 639 A.2d 112, 120 (Md. 1994)). From a defendant's

perspective, it "may avoid liability for tortious interference with a contract by proving that its

conduct was justified or excused in some way." *Id.* at 803 (citing *Sharrow v. State Farm Mutual*,

---

[3] As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire, Ins. Co. v. Harleysville, Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

511 A.2d 492 (Md. 1986)). Importantly, "acting to pursue one's own business interests at the expense of others is not, in itself, tortious." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269 (Md. 1994).

Plaintiff has failed to allege facts sufficient to establish that the Defendant intentionally interfered with her employment contract. There are no facts to support the allegation that Sample's letter was written with the purpose to cause Plaintiff damage, nor is there an inference that mailing such letter was independently wrongful. Sample mailed a letter to Byam's supervisors for the explicit purpose of "fil[ing] a formal complaint." (ECF No. 1-1.) Though Plaintiff was terminated shortly after the Commission received Sample's letter, no facts suggest that such result was Sample's intention. As Defendant appropriately notes, there are simply no allegations that Sample "had reason to believe that sending a letter expressing the desire to file a formal complaint would lead to termination, as opposed to an investigation, counseling, additional training, a verbal rebuke, a suspension, a transfer, or simply placing the letter in her personnel file, or no action at all, or myriad other possibilities." (ECF No. 6-1 at 10.) Filing a formal complaint is not independently wrongful or unlawful. *See Merling*, 605 A.2d at 90 (interference must be wrongful or unlawful). Furthermore, as evident from the contents of the letter, Sample was acting well within her business interest in reporting purported professional misbehavior as ODC's manager. Accordingly, Defendant's Motion to Dismiss (ECF No. 6) this claim is GRANTED and Plaintiff's claim for Wrongful Interference with Economic Relations (Count One) is DISMISSED WITH PREJUDICE.

## II.    Invasion of Privacy: Putting Plaintiff in a False Light (Count Three)

A claim for "false light invasion of privacy" under Maryland law requires a plaintiff to establish: "(1) that she was exposed to publicity in a false light before the public; (2) that a reasonable person would find the publicity highly offense; and (3) that the actor had knowledge of or acted in reckless disregard of the publicized matter placing plaintiff in a false light." *Holt v. Camus*, 128 F. Supp. 2d 812, 816 (D. Md. 1999), *aff'd*, 217 F.3d 839 (4th Cir. 2000) (citing *Hollander v. Lubow*, 351 A.2d 421 (Md. 1976)). "Complete defenses exist where (1) the statement is true, or (2) the plaintiff consented to the publication." *Furman v. Sheppard*, 744 A.2d 583, 587 (Md. 2000) (citing *Hollander*, 351 A.2d at 421).

"An allegation of false light must meet the same legal standards as an allegation of defamation." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1146-47 (Md. 2012) (internal citations omitted). A defamation claim requires showing "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 935 A.2d 719, 724 (Md. 2007) (citing *Smith v. Danielczyk*, 928 A.2d 795, 805 (Md. 2007)). A privilege that shields liability for defamation exists where a defendant, in good faith, "publishes a statement in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties…." *Marchesi v. Franchino*, 387 A.2d 1129, 1131 (Md. 1978). Such privilege is only conditional and may be negated when a plaintiff alleges malice or ill-will. *Piscatelli*, 35 A.3d at 1148. A court may properly find a conditional, or qualified, privilege is applicable where a plaintiff fails to allege "facts that would support a finding of malice." *Id.* (internal citations omitted).

Plaintiff's claim fails for a multitude of reasons, but particularly because there are no facts in the Complaint that show Ms. Sample's letter was publicized or otherwise exposed to the public. First, the letter was addressed solely to Plaintiff's supervisor, and the Complaint is devoid of facts that indicate the supervisor made the letter, or its contents, public. Second, there are no facts that allege the letter was otherwise publicly available without action on the supervisor's behalf. Plaintiff's Opposition argues that because she was an employee for the State of Maryland, "it may reasonably be inferred Ms. Sample knew her complaint about Ms. Byam would potentially become a public document subject to disclosure under the Maryland Public Information Act." (ECF No. 10-1 at 8.) There is simply no basis for the Court to make such an inference. There is no indication that filing a complaint about a state employee would become public record, and the very statute upon which Plaintiff relies undermines her argument.

Although the Maryland Public Information Act provides an avenue for public disclosure of documents that are a matter of public interest, the Defendant highlights that the Act also provides that "a custodian shall deny inspection of a personnel record of an individual…." Md. Code Ann., Gen. Provis. § 4-311(a); (ECF No. 12 at 6.) "[A] personnel record consists of 'those documents that directly pertain to employment and an employee's ability to perform a job.'" *Lamson v. Montgomery Cnty.*, 190 A.3d 316, 325 (Md. 2018) (quoting *Kirwan v. The Diamondback*, 721 A.2d 196, 200 (Md. 1998)). Ms. Sample's letter pertained directly to Plaintiff's ability to perform her job. Therefore, it would not be subject to disclosure under the Maryland Public Information Act and there is no plausible theory that Ms. Sample's

letter to Plaintiff's supervisor constituted publicity before the public. Consequently, Plaintiff fails to establish even the first element for a claim of false light invasion of privacy.

Even if Ms. Sample's letter was somehow exposed publicly and all other elements were sufficiently plead, the statements contained therein were in furtherance of legitimate interests shared with the recipient, sufficient to shield Defendant from liability. Ms. Sample's letter expressed concerns about Byam's conduct as an employee of the Maryland Lottery Commission assigned at ODC. (ECF No. 1-1.) The letter notes that Byam's actions have negatively impacted the employees at ODC, that certain information in Byam's possession belongs solely in the Commission's possession, and requests that the Commission involve ODC in placing former employees at its casino. *Id.* Each of those points directly relate to ODC's legitimate interest in cultivating a particular work environment, and that interest is shared with the Maryland Lottery Commission as it relates to one of its employees.  In other words, as Defendant aptly notes, "[the Commission] and ODC share a common interest in ensuring that state employees are not unnecessarily jeopardizing or disrupting casino operations or misappropriating confidential information." (ECF No. 6-1 at 23-24.) Plaintiff has failed to allege any facts that Sample acted with malice or ill-will, thereby rendering this privilege applicable and in effect. As a result, Defendant's Motion to Dismiss (ECF No. 6) this claim is GRANTED and Plaintiff's claim for Invasion of Privacy: Putting Plaintiff in a False Light (Count Three) is DISMISSED WITH PREJUDICE.

## III.    Plaintiff's Complaint is Dismissed with Prejudice

A plaintiff may amend her complaint as a matter of course within twenty-one (21) days of serving it, or twenty-one days "after service of a responsive pleading or 21 days after service

10

of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "[W]hen the district court believes a deficiency in a complaint can be cured, it should say so and grant leave to amend." *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022). Otherwise, "when a district court dismisses a complaint or all claims without providing leave to amend … the order dismissing the complaint is final and appealable." *Id.*

The Court does not believe Plaintiff can cure the abundant deficiencies in her Complaint and therefore declines to grant Plaintiff leave to amend. In brief, amendment is inappropriate here and would be futile because Plaintiff's claims are inadequately plead and patently unsupported, especially given that her allegations wholly rely on a legitimately-filed formal complaint against her. Because dismissal without leave to amend is in effect a final order, the Court concludes that such dismissal is with prejudice. Accordingly, all of Plaintiff's claims are dismissed with prejudice. *See John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, No. 8:20-3552-PWG, 2022 WL 3544256, at *19 (D. Md. Aug. 18, 2022) (dismissing complaint with prejudice because amendment would be futile).

## CONCLUSION

For the reasons stated above, Defendant ODC's Motion to Dismiss (ECF No. 6) is GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE. A separate Order follows.

Dated: February 1, 2023                                      _____/s/_____
                                                            Richard D. Bennett
                                                            United States District Judge